United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 7, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-31080

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

THOMAS CHRISTIE

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana
No. 5:04-CR-50140

Before SMITH, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Thomas Christie ("Christie") appeals his child pornography conviction and sentence that followed his conditional plea of guilty after the district court denied his motion to suppress evidence seized from a computer located in a business office in his residence. Christie challenges the district court's order denying his motion to suppress and the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

validity of his conditional plea.  For the reasons that follow, we AFFIRM.

## I.  BACKGROUND

In March 2004, James Podboy ("Podboy"), a special agent with Immigration and Customs Enforcement of the Department of Homeland Security, presented an application for a search warrant to a federal magistrate judge.  In the affidavit submitted in support of the application, Podboy described the government's investigation that revealed that Christie had purchased access to Internet web sites containing child pornography.  Podboy stated in his affidavit that he had probable cause to believe that evidence of child pornography would be found at Christie's residence located at 3418 Seminole Drive, Shreveport, Louisiana 71107.  An attachment to the application described 3418 Seminole Drive as "a single family, one level home" and detailed the exterior of the premises.

Podboy's affidavit further stated that he had checked Louisiana motor vehicle records to verify that Christie lived at 3418 Seminole Drive and that surveillance of the premises in the previous month had revealed two vehicles registered to Christie parked in the driveway.  Podboy averred that the cable company records showed Christie was receiving high speed Internet service at 3418 Seminole Drive using the same email address contained in transactional information discovered in the government's

underlying investigation.  Podboy also attested that a criminal history check revealed that Christie had prior convictions for oral sexual penetration of a child less than thirteen years old and interstate transportation of child pornography.

On March 25, 2004, the magistrate judge signed a search warrant permitting police to search and seize, inter alia, computer equipment, data and memory storage devices, computer files, photographs, or any other visual depictions of minors engaging in sexually explicit conduct, found in the "[r]esidence of Thomas Christie at 3418 Seminole Drive, Shreveport, Louisiana 71107."  The following morning, agents executed the search warrant.  Instead of entering by force, agents called Christie who returned home and, after being told that the agents had a search warrant, opened the garage door and allowed the agents to enter the residence through a door in the garage leading to the interior of the home.  Once inside, agents seized three hard drives from two computers, all of which contained child pornography.  Two of the hard drives were from a computer located in the living room/guest bedroom area; the third hard drive was from a computer located in an interior room that was used as a business office.  On October 13, 2004, Christie was indicted on one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).[1]

_____

[1]  There was also a count in the indictment alleging forfeitures of certain property, but it was later dismissed by

On June 3, 2005, Christie moved to suppress the evidence of child pornography discovered on the computer located in the business office within his residence. In support of his motion, Christie testified that the office was for Creative Home Improvement Services ("CHIS"), a construction business in which he was a fifty-percent owner. He testified that the business office had two entrances, one exterior door in the garage and one interior door in the residence, both of which were marked with placards identifying the room as a business office. He conceded that the sign on the exterior door in the garage "probably fell off" because it was secured with scotch tape "and it does fall down." He also admitted that if the interior door was open, agents would not have seen the business placard on the outside of the interior door because the door opens against the wall. Christie testified, however, that there were other indications that a business was being conducted in his residence, including a trailer with a sign on it parked outside the residence, vehicles with signs on them parked in the driveway, and construction-related tools and equipment located on the side of the house.

In opposition to Christie's motion to suppress, the government introduced Agent Podboy. Podboy testified that he entered the residence directly through the garage and did not recall seeing the exterior door leading from the garage directly

_____

the government pursuant to Christie's plea agreement.

-4-

into the business office. He also testified that he did not see any type of business sign inside the garage. As for the interior door in the residence displaying a business sign, Podboy testified that the door was open and unlocked. When questioned about the exterior indications of a business being operated out of the residence, including vehicles displaying the business logo and business equipment and a trailer in the yard, Podboy responded that he was not aware there was a business inside the residence.

On August 12, 2005, the magistrate judge issued a Report and Recommendation denying the motion to suppress. The magistrate judge found, as an initial matter, that the office was not a separate structure but was simply a room within the same structure. He further found that if the garage door to the residence is pulled down in the closed position, as it was when the agents conducted surveillance of the property prior to the search, "there is nothing apparent from viewing the residence which would indicate to anyone that a construction company is operated from an office within the residence." The magistrate judge rejected the evidence introduced by Christie that there were indications of a business from the exterior of the home. He found that none of the equipment was inconsistent with that found in other yards in the area. With regard to the vehicles, he found that "many employees bring their work-related vehicles home in the evenings, and the mere presence of a vehicle or small

flatbed trailer bearing a company's designation would not necessarily lead a reasonable agent to believe that a business is being conducted from a home office within the residence."

The magistrate judge made several findings of fact related to Christie's argument that the agents knew or should have known there was a business office once they were inside the garage of the residence. First, he found that "[i]f there was a sign on that exterior door [from the garage into the home office] at any time prior to the search, the sign was removed or had fallen off (as it was prone to do) before the search." Second, he found that the sign on the interior door leading into the office "is not visible if that interior door is left open, and there is no evidence in this case that the door was closed." Finally, he found that "the videotape of the home office at the time of the search shows that the layout and items located in the home office are similar to many spare rooms in homes that contain computer desks, recliners, televisions, family photographs and the like." He concluded that even if the interior door to the office was closed and locked and even if the agents saw the business sign, "a search warrant supported by probable cause to search the residence for child pornography included authorization to enter and search that room." On September 27, 2005, the district court concurred with the findings of the magistrate judge and denied Christie's motion to suppress.

On August 29, 2005, Christie entered a guilty plea

conditioned on his right to appeal the district court's denial of his motion to suppress evidence from the business office. The district court accepted the conditional plea and sentenced Christie to the statutory minimum of ten years in prison and five years of supervised release. See 18 U.S.C. § 2252A(b)(2). Christie filed this timely appeal.

## II. DISCUSSION

### A. Denial of Motion to Suppress

Christie claims that the agents exceeded the scope of the search warrant by searching the CHIS business office located within his residence. He argues that the agents knew or should have known the office was a distinct unit separate from the residence because there were signs on the exterior and interior doors to the office and on the vehicles and a trailer outside the house indicating it was for business and not personal use. In reviewing a district court's ruling on a motion to suppress, we review questions of law de novo and the district court's findings of fact for clear error. United States v. Carrillo-Morales, 27 F.3d 1054, 1060-61 (5th Cir. 1994).

Christie has not demonstrated that any of the district court's factual findings were clearly erroneous. Although he argues that the district court failed to make a specific fact finding on whether the agents who conducted the initial sweep of his residence opened the interior door to the office, and thus

-7-

concealed to the searching agents that the room belonged to a business, he has pointed to no record evidence refuting the district court's finding that "there is no evidence in this case that the door was closed." To the extent Christie is arguing that the district court should have made a specific finding on the activities of the sweeping officers, we find no merit in this contention. The trial court is not required to make findings on all facts presented or to make detailed evidentiary findings. Rather, "if the findings are sufficient to support the ultimate conclusion of the court they are sufficient." Strickland v. W. Horace Williams Co., 230 F.2d 793, 798 (5th Cir. 1956) (internal quotation marks and citation omitted).[2]

The district court's findings support its conclusion that the agents reasonably searched the office as part of the premises described in the search warrant. The garage, which served as the entrance to both the residence and the office, did not bear separate municipal numbers or identifying marks to indicate the existence of two separate premises. The office was part of the

---

[2] Christie also appears to be arguing that if the sweeping agents opened the interior door to the office, then the "collective knowledge" of law enforcement personnel at the site would have provided notice that the scope of the warrant was being exceeded. Christie does not point to any authority to support his contention. The only case cited by Christie, United States v. Waldrop, 404 F.3d 365 (5th Cir. 2005), does not support Christie's ultimate conclusion regarding the collective knowledge doctrine. We therefore decline to visit this issue any further on appeal. See Dardar v. Lafourche Realty Co., 985 F.2d 824, 831 (5th Cir. 1993) ("Questions posed for appellate review but inadequately briefed are considered abandoned.").

residence; it was simply a room within the same structure.  The address in the warrant, 3418 Seminole Drive, served as the address for the residence and the office.  On these facts, we hold that the agents did not exceed the scope of the warrant by searching the CHIS office.  Our conclusion is supported by cases with similar facts before the Supreme Court and this circuit.  See Maryland v. Garrison, 480 U.S. 79, 88 (1987) (concluding that the officers' search of the defendant's apartment was reasonable where the objective facts available to the officers at the time of the search suggested no distinction between another individual's apartment and the defendant's apartment located on the same floor); Carrillo-Morales, 27 F.3d at 1064 (holding that the officers acted reasonably and in good faith in assuming the warrant to search the defendant's body shop covered the defendant's residence where the residence was inside the same building as the body shop, the outside of the building displayed only the municipal number for the body shop, and the buildings were similar in appearance and separated by an awning); United States v. Prout, 526 F.2d 380, 388 (5th Cir. 1976) (rejecting the defendant's argument that the description in the warrant authorized only a search of the realty office and was insufficient for the search of an upstairs apartment where, although the business and residence had separate addresses and separate utility meters, there were no identifying marks to indicate the existence of two separate premises).  Accordingly,

we affirm the district court's order denying Christie's motion to suppress evidence from the office located in his residence.

B.  Validity of Conditional Plea

In his supplemental brief before this court, Christie challenges for the first time the validity of his conditional plea agreement.  He argues that his guilty plea conditioned on a non-case-dispositive pretrial motion is invalid and must be vacated.  Because Christie did not present this issue in his original brief before this court, he has waived it, and we cannot consider it on appeal.  See United States v. Ogle, 415 F.3d 382, 383 (5th Cir.), cert. denied, 126 S. Ct. 837 (2005) ("Our cases make it clear that an argument not raised in appellant's original brief as required by FED. R. APP. P. 28 is waived."); see also United States v. Cruz-Barraza, 157 F. App'x 768, 770 (5th Cir. 2005) (unpublished), cert. denied, 126 S. Ct. 1814 (2006) (refusing to consider issues raised in the defendant's supplemental brief "because issues not raised in an appellant's initial brief as required by FED. R. APP. P. 28 are deemed waived").

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM Christie's judgment of conviction and sentence as imposed by the district court.

AFFIRMED.